UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RYAN BULLARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:15 CV 701 ACL |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM AND ORDER**

Plaintiff Ryan Bullard brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Social Security Administration Commissioner's denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Act. Bullard alleged that he was disabled because of spinal stenosis, degenerative disc disease, arthritis in his back, left eye blindness, and left leg and arm numbness. (Tr. 171.)

An Administrative Law Judge (ALJ) found that, despite Bullard's multiple severe impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c). A summary of the entire record is presented in the parties' briefs and is repeated here only to the extent necessary.

## I. Procedural History

Bullard protectively filed applications for DIB and SSI on October 17, 2011, claiming that he became unable to work due to his disabling condition on March 3, 2009. (Tr. 12, 149-50, 153-58). Bullard's claims were denied initially. (Tr. 84-91.) Following an administrative hearing, Bullard's claims were denied in a written opinion by an ALJ, dated September 20, 2013. (Tr. 12-23.) Bullard then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on February 24, 2015. (Tr. 8, 1-3.) Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Bullard claims that the ALJ "failed to sufficiently pose the hypothetical to the vocational expert in that he omitted issues of visual acuity and obesity." (Doc. 22 at 16.)

## II. The ALJ's Determination

The ALJ found that Bullard met the insured status requirements of the Social Security Act through September 30, 2012, and that he has not engaged in substantial gainful activity since March 3, 2009, his alleged onset date. (Tr. 14.)

In addition, the ALJ concluded that Bullard had the following severe impairments: degenerative disc disease, depression, posttraumatic stress disorder, obesity, and decreased visual acuity. (Tr. 14.) The ALJ found that Bullard did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 15.)

As to Bullard's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he will be unable to climb ladders, ropes or scaffolding; he can only occasionally climb ramps and stairs, stoop, kneel, crouch and crawl; he is to avoid concentrated exposure to extreme vibration and all operational control of moving machinery, working at unprotected heights, and the use of hazardous machinery. The claimant is limited to work that involves only simple, routine and repetitive tasks in a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting with no interaction with the public, only casual and infrequent contact with co-workers, and contact with supervisors concerning work duties (when work duties are being performed satisfactorily) occurring no more than four times per workday.

(Tr. 16.)

The ALJ found that Bullard's allegations regarding his limitations were not entirely credible. (Tr. 21.) In determining Bullard's RFC, the ALJ indicated that he was assigning "significant weight" to the opinions of two independent orthopedic examiners, Drs. Sandra Tate and David Volarich. *Id.*

The ALJ further found that Bullard has no past relevant work. *Id.* The ALJ noted that a vocational expert testified, via interrogatories, that Bullard could perform jobs existing in significant numbers in the national economy, such as housekeeper/cleaner, small product assembler, and mailroom clerk. (Tr. 22, 191-93, 195-96.) The ALJ therefore concluded that Bullard has not been under a disability, as defined in the Social Security Act, from March 3, 2009, through the date of the decision. (Tr. 23.)

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on October 17, 2011, the claimant is not disabled under sections 216(i) and 223(d) of the

> Social Security Act.
>
> Based on the application for supplemental security income protectively filed on October 17, 2011, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

*Id.*

## III. Applicable Law

### III.A. Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

> 5. Any corroboration by third parties of the plaintiff's impairments.
>
> 6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation marks and citation omitted). *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).

### III.B. Determination of Disability

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in

several regions of the country." 42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id*. If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id*. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her

age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the

Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

## IV. Discussion

Bullard argues that the ALJ erred in failing to set forth limitations in his RFC to accommodate Bullard's decreased visual acuity and obesity. Although the ALJ found that Bullard suffered from multiple severe physical and mental impairments, Bullard only challenges the ALJ's findings with regard to his vision and obesity. The undersigned will therefore limit the discussion herein to those two impairments.

Residual functional capacity is defined as that which a person remains able to do despite his limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of his symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703–04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712.

However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing his RFC. *Goff,* 421 F.3d at 790.

With regard to Bullard's visual acuity, the ALJ acknowledged that the record reveals he is without vision in the left eye, and found that his decreased visual acuity was a severe impairment. (Tr. 19, 47-48, 805.) The ALJ, however, noted that this condition has been present since Bullard's birth and it did not prevent him from working in the past. (Tr. 19, 47-48.) Bullard worked as a cashier at a gas station for two years, from May 2006 to May 2008. (Tr. 172.) He also worked as a cook from December 2008 through March 2009. *Id.* That a claimant works with an impairment for years "demonstrate[s] the impairments are not disabling in the present" absent evidence of significant deterioration of his condition. *Goff v. Barnhart,* 421 F.3d 785, 792–93 (8th Cir. 2005); *Cagle v. Astrue,* No. 1:09 CV 40 HEA/MLM, 2010 WL 1539111, at *9 (E.D. Mo. Mar. 30, 2010). The ALJ also pointed out that Bullard has normal vision in his right eye, with his most recent testing in October 2011 showing corrected vision of 20/20-1. (Tr. 19, 545.) Nevertheless, the ALJ indicated that he had considered Bullard's vision in limiting him to work around dangers such as heights and moving machinery. (Tr. 19.)

The ALJ's determination is supported by substantial evidence. Notably, although Bullard argues that the ALJ did not account for his decreased visual acuity, he does not argue what additional limitations should have been included. As Defendant points out, not only has Bullard been able to work in the past despite his vision loss, he testified that he is able to drive daily without difficulty (Tr. 36), he plays volleyball (Tr. 440), and is able to read (Tr. 37.) Bullard has not demonstrated that he has any greater restrictions due to his vision loss than those found by the

ALJ.

As to Bullard's obesity, the ALJ stated that the record reveals Bullard is five-feet, nine-inches tall and routinely weighs in the range of 225 to 250 pound range. (Tr. 19-20, 35, 207, 215, 250, 268.) The ALJ found that Bullard's obesity was a severe impairment. (Tr. 14.) Although obesity is no longer, in itself, a listed impairment, *see* SSR 02–1p, 2000 WL 628049, at *1, the Social Security Regulations specifically instruct that the cumulative effects of obesity must be considered with a claimant's other impairments.

The ALJ restricted Bullard to only light work with no climbing of ladders, ropes, or scaffolds; only occasional climbing of ramps and stairs, stooping, kneeling, crouching, and crawling; and no operating moving machinery, working at unprotected heights, or using hazardous machinery. (Tr. 16.) In making this determination, the ALJ assigned significant weight to the opinion of two independent orthopedic examiners, Drs. Tate and Volarich. (Tr. 21.) Bullard saw Dr. Tate on February 12, 2010, in connection with a work-related injury he sustained on August 25, 2008. (Tr. 801.) Bullard had injured his low thoracic spine while working as a cashier at a convenience store. *Id.* Dr. Tate noted that he was diagnosed with an acute inferior endplate fracture at T11 and was treated conservatively. *Id.* He was also diagnosed with aggravation of degenerative disc disease and degenerative joint disease from T10 through L1. *Id.* No surgery was required. *Id.* Upon examination, Bullard had full strength in all major groups of the upper and lower extremities, some decreased range of motion of the thoracic spine, a normal sensory examination, he was able to heel walk, tandem walk, stand on each foot without too much difficulty, and squat fully and stand back upright to an erect position with back pain. (Tr. 805-06.) His straight leg raise test was negative. (Tr. 806.)

Bullard saw Dr. Tate on April 21, 2010, for an independent medical examination at the

request of the state agency. (Tr. 440.) Bullard reported that he was unable to work due to mid-back pain he experienced since his work injury. *Id.* Dr. Tate noted that Bullard also reported that he had injured his left knee after playing volleyball one week prior to his examination. *Id.* Upon examination, Dr. Tate noted left paravertebral tenderness and tightness of the thoracic spine and some decreased range of motion. (Tr. 441.) Straight leg testing was negative. *Id.* Bullard's gait was within normal limits, he was able to ambulate without specific deficits, and there were no coordination deficits. *Id.* Dr. Tate stated that Bullard does have mild to moderate spinal canal narrowing at T10-11, but he does not have evidence of myelopathy and he "apparently does not have enough pain to limit him form playing volleyball." *Id.* Dr. Tate expressed the opinion that Bullard could work "at the minimum with restrictions of no lifting more than 30 pounds." *Id.* Dr. Tate indicated that Bullard has new complaints of left knee pain due to his recent knee injury, but any new restrictions should be temporary until he received medical treatment for his possible meniscal tear. *Id.* Dr. Tate stated that Bullard is "otherwise unlimited." *Id.*

The RFC formulated by the ALJ is consistent with the opinions of Drs. Volarich and Tate. The ALJ also cited Bullard's activities of playing volleyball, attending to his personal needs, performing some household chores, driving a vehicle, and shopping in stores. (Tr. 21, 36, 440, 804.) Although Bullard argues that the ALJ failed to impose limitations related to his obesity, he does not indicate what additional limitations should have been included, nor does he point to any medical evidence supporting the presence of greater limitations. The undersigned finds that the RFC formulated by the ALJ accounted for Bullard's obesity, in combination with his musculoskeletal and other impairments, and is supported by substantial evidence in the record as a whole. Because the ALJ specifically took Bullard's obesity into account when evaluating

Bullard's impairments and their effect on his ability to perform work-related functions, Bullard's claim that the ALJ failed to consider his obesity must fail. *Heino v. Astrue,* 578 F.3d 873, 881–82 (8th Cir. 2009).

After determining Bullard's RFC, the ALJ found that Bullard was unable to perform any past relevant work. (Tr. 21.) The ALJ properly relied on the testimony of a vocational expert to find that Bullard could perform other work existing in significant numbers in the national economy with his RFC. (Tr. 22.) *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations). Thus, the ALJ's decision finding Bullard not disabled is supported by substantial evidence.

Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2016.